UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

LACEY A. L., )
 )
       *Plaintiff* )
 )
v. ) No. 1:19-cv-00126-GZS
 )
ANDREW M. SAUL, )
*Commissioner of Social Security,*[1] )
 )
       *Defendant* )

### *REPORT AND RECOMMENDED DECISION*[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that (i) the ALJ's mental residual functional capacity ("RFC") determination was unsupported by substantial evidence because he relied on the opinion of an agency nonexamining consultant, Brian Stahl, Ph.D., who did not have the benefit of review of later-submitted material evidence and improperly interpreted raw medical data postdating Dr. Stahl's review, (ii) the ALJ's physical RFC determination was unsupported by substantial evidence, and (iii) the ALJ failed to take into account the interplay between the plaintiff's mental and physical impairments. *See* Statement of Specific Errors ("Statement of Errors") (ECF No. 11)

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

at 1-19. I agree that, in determining the plaintiff's mental RFC, the ALJ impermissibly interpreted raw medical evidence, and on that basis, recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent herewith. I need not and do not reach the plaintiff's remaining points of error.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2019, Finding 1, Record at 17; that she had the severe impairments of myofascial pain syndrome, post-traumatic stress disorder ("PTSD"), bipolar II disorder, borderline personality disorder, anxiety disorder, and cannabis use disorder, Finding 3, *id*. at 18; that she had the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that she could frequently perform all postural activities (*i.e.*, sit, stand, lift, carry, etc.), could perform no tandem or other team-oriented type work, could have brief and incidental contact with the general public, and could engage in no more than occasional decision-making or changes in the work setting, Finding 5, *id*. at 21; that, considering her age (30 years old, defined as a younger individual, on her alleged disability onset date, September 1, 2015), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 28; and that she, therefore, had not been disabled from September 1, 2015, her alleged onset date of disability, through the date of the decision, July 2, 2018, Finding 11, *id*. at 29-30. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

In assessing the plaintiff's RFC, the ALJ explained:

> While the [plaintiff] has expressed significant difficulties secondary to multiple physical and mental impairments causing some difficulties with sustaining concentration, persistence and pace, treating and examining sources' statements and objective findings support that these impairments would not preclude her from performing all work activity since her alleged onset date of September 2015.

Record at 22.

However, as the plaintiff observes, *see* Statement of Errors at 2-6, with respect to her mental impairments, the ALJ relied on only one expert opinion of record, that of Dr. Stahl, which he accorded "great weight[,]" Record at 26. He gave the opinion of examining source Craig W. Curtis, M.D., an independent medical examiner in a separate workers' compensation case, "significant weight" but ignored his findings regarding the plaintiff's mental impairments, and rejected the opinions of examining source Jeffrey S. Barkin, M.D., an independent psychiatric

3

examiner in the workers' compensation case, which he accorded "little weight," and treating Acadia Hospital mental health provider James Grindle, PMH-NP, which he gave "limited weight[.]" *Id.*

In his April 3, 2017, opinion, Dr. Stahl found that, despite the plaintiff's severe impairments of anxiety and depression, she was "able to understand and remember at least simple instructions and tasks" and "work in 2 hour blocks performing simple tasks over the course of a normal workday/workweek[,]" was "not able to work with the public but c[ould] work with coworkers and supervisors[,]" and was "able to adapt to simple changes." *Id*. at 112-13.

The records available to Dr. Stahl bearing on the plaintiff's mental impairments consisted of 13 progress notes from Acadia Hospital spanning the period from January 2016 to February 2017, including notes of PMH-NP Grindle, as well as a March 30, 2017, Eastern Maine Outpatient Therapy psychological examination, and February 6, 2017, mental health observations of a non-specialist physician. *See* Statement of Errors at 4; Defendant's Opposition to Plaintiff's Statement of Specific Errors ("Opposition") (ECF No. 12) at 4-5. However, Dr. Stahl did not have the benefit of review of evidence that included the October 6, 2016, evaluation of Dr. Curtis, the November 11, 2016, evaluation of Dr. Barkin, later Acadia Hospital mental health treatment notes, Maine Department of Health & Human Services ("DHHS") employability forms completed by PMH-NP Grindle, or a May 26, 2017, vocational evaluation report by Everson Stinson, CRC. *See* Statement of Errors at 5, 9-10; Opposition at 5-14; Record at 715-42, 762-70, 838-42; *see also, e.g., id*. at 940-43, 945-46, 1018-20.[3]

The plaintiff was referred to Dr. Curtis in connection with a workers' compensation claim stemming from an incident on July 22, 2015, during which an irate driver deliberately struck her

---

[3] There is no dispute that, although the Curtis and Barkin evaluations predate the Stahl opinion, they were added to the record following Dr. Stahl's review. *See* Statement of Errors at 5; Opposition at 10-11.

and knocked her to the ground while she was directing traffic as part of her job duties as a flagger. *See id*. at 715. Dr. Curtis was asked to evaluate "on-going issues primarily related to right shoulder pain and post-traumatic stress issues." *Id*. With the benefit of a record review and examination of the plaintiff, *see id*. at 715-22, Dr. Curtis diagnosed her with PTSD, preexisting, aggravated, and anxiety disorder, preexisting, aggravated, *see id*. at 722, deeming her mental conditions more limiting than her physical ones, *see id*. at 723. He explained:

> [The plaintiff] had a significant pre-existing psychiatric condition as evidenced by her extensive prior history and treatment. In the setting of someone without that psychiatric history, this type of psychological response to what would seemingly be a relatively minor incident, has turned into be a very disabling event for [the plaintiff]. Therefore, this could be considered a significant aggravation of that underlying psychiatric condition with a maladaptive response to this event.

*Id*. He concluded:

> As far as her psychological and psychiatric complaints, I do believe a course of cognitive behavioral therapy would be warranted as suggested by Dr. Arabadjis [Peter Arabadjis, M.D.]. I would state that this should occur over the next six to eight weeks and return her to her baseline psychiatric function. Once she returns to her baseline psychiatric status, then no restrictions would apply to her reemployment efforts.

*Id*. at 723-24. He recommended that a psychologist or psychiatrist also evaluate the plaintiff. *See id*. at 724.

As recommended by Dr. Curtis, the plaintiff was referred for an independent evaluation by Dr. Barkin, a psychiatrist who issued a report dated November 11, 2016. *See id*. at 726. With the benefit of review of treatment records and examination, Dr. Barkin diagnosed the plaintiff with, *inter alia*, PTSD and borderline personality disorder, as well as "[r]ule out bipolar disorder type 2 by supplied records." *Id*. at 740. He concluded that it was "likely that the work injury did aggravate or combine with the pre-injury [PTSD] and borderline personality disorder in a significant manner[,]" with pain and increased anxiety worsening her PTSD-related anxiety symptoms and her preexisting borderline personality disorder, resulting "in additional external

5

stress and dysfunction related to interpersonal difficulties, recent homelessness, and poverty." *Id*.

He stated:

> At the present time, [the plaintiff] is unable to work on a full-time basis as a result of her high level of anxiety and panic. She reports she is in a near state of panic most of the time, and is unable to leave her house without doses of benzodiazepines. At the present time, it is unlikely as a result of her high levels of anxiety that [she] would successfully succeed in a work environment. The perceived stress of employment would likely further impair her functioning and increase her anxiety. The restriction against current employment is the result of her underlying (pre-injury) posttraumatic stress and borderline personality disorder and its exacerbation by the July 22, 2015 injury.

*Id*. at 741. Nonetheless, Dr. Barkin recommended that the plaintiff, who had just started cognitive behavioral therapy, "be strongly encouraged to return to work . . . on a part-time basis[,] . . . gradually increas[ing] her hours worked per week, as tolerated, starting part-time at 20 hours per week." *Id*.

PMH-NP Grindle indicated on the plaintiff's DHHS employability forms that she could have "[n]o mandatory work" but could "explore educational offerings[.]" *Id*. at 838-39. He described the functional limitations of her PTSD and bipolar II disorder as including vigilance and being overreactive, guarded, and tearful. *See id*.

Finally, in connection with her workers' compensation claim, the plaintiff was referred to CRC Stinson for "evaluation of the need for and kind of service, treatment or training necessary and appropriate to return [her] to suitable employment[.]" *Id*. at 762. With the benefit of a review of medical records, administration of vocational assessments, including the Employment Readiness Scale, and observation of the plaintiff's participation in a career exploration workshop, *see id*. at 763-70, CRC Stinson concluded on May 26, 2017:

> Given [the plaintiff's] chronic mental health problems, significant trauma history and major impairment in relationships and social functioning coupled with intense emotions such as anger outbursts inappropriate to the situation, her treatment should be well along bearing results before she is considered to be a candidate for

6

vocational rehabilitation services, and treatment could very well be lengthy. At this time, I am not able to offer a plan that would lead to suitable employment for [the plaintiff].

*Id*. at 770.

The plaintiff first contends that the ALJ erred in ignoring or rejecting all of the foregoing evidence unseen by Dr. Stahl. *See* Statement of Errors at 6-11. However, even assuming *arguendo* that the ALJ did not err in discounting or ignoring that evidence, he deviated in some respects from the findings of Dr. Stahl, the sole expert whose opinion he adopted. Whereas Dr. Stahl found severe mental impairments of anxiety and depression, *see* Record at 113, the ALJ found severe mental impairments of PTSD, bipolar II disorder, borderline personality disorder, and anxiety disorder, *see* Finding 3, *id*. at 18. And, whereas Dr. Stahl deemed the plaintiff "not able to work with the public" but able to "work with coworkers and supervisors[,]" *id*. at 113, the ALJ concluded that she could "perform no tandem or other team-orientated type work" and could have "brief and incidental contact with the general public[,]" Finding 5, *id*. at 21. He explained that he had "taken into consideration evidence received at the hearing, including the chronicity of her mental impairment, but findings including the August 2017, note that the [plaintiff] was able to attend a sporting event with her daughter independently." *Id*. at 26 (citation omitted). He added:

> Recent April 2018 records indicate that the [plaintiff] had good judgment/insight, as well as, logical thought process and content, support[ing] that she . . . has improvement with her mood and ability to sustain concentration as well as interact with others. . . . These findings are consistent with the evidence of record showing [she] has . . . [PTSD], bipolar II disorder, borderline personality disorder, anxiety disorder and cannabis use disorder, but with compliance to prescribed treatment, is capable of performing work tasks.

*Id*. at 26-27 (citations omitted).

As the plaintiff next argues, *see* Statement of Errors at 11-15, in so doing, the ALJ interpreted raw medical evidence, requiring remand. The ALJ found that the plaintiff was both more limited than found by Dr. Stahl, in that she required no tandem or team-oriented work, and

7

less limited, in that she could have brief and incidental contact with the general public. *Compare* Record at 113 *with* Finding 5, *id*. at 21. However, as in *Wendi C. M. v. Saul*, No. 1:18-cv-00332-JHR, 2019 WL 4259457 (D. Me. Sept. 8, 2019), those findings were "neither supported by expert opinion nor a matter of common-sense judgment." *Wendi C. M.*, 2019 WL 4259457, at \*2 (citing *Staples v. Berryhill* ("*Lisa Staples*"), No. 1:16-cv-00091-GZS, 2017 WL 1011426, at \*4 (D. Me. Mar. 15, 2017) (rec. dec., *aff'd* Mar. 30, 2017), for the proposition that a "mental RFC determination that was neither supported by expert opinion nor the product of a common-sense judgment was unsupported by substantial evidence").

While the ALJ in this case, like the ALJ in *Wendi C. M.*, explained his derivation of the plaintiff's mental RFC, *compare id*. at \*2-3 *with* Record at 26-27, his explanation underscores the pitfalls of interpreting raw medical evidence. First, as the plaintiff's counsel noted at oral argument, in stating that he accepted Dr. Stahl's finding of an "ability to work occasionally with coworkers and supervisors," Record at 26, the ALJ did not recognize that Dr. Stahl had found that the plaintiff could work with coworkers and supervisors without any stated limitation, *see id*. at 113. Second, while the ALJ noted that he had taken into account evidence unseen by Dr. Stahl, including that bearing on the "chronicity of [the plaintiff's] mental impairment," he did not explain how he took that chronicity into account in determining her mental RFC. *Id*. at 26-27.

Third, as in *Wendi C.M.*, the ALJ did not adequately explain how he accounted for the severe mental impairments not taken into account by Dr. Stahl that had been diagnosed by Dr. Curtis, Dr. Barkin, and/or Acadia Hospital providers, including PTSD, bipolar II disorder, and borderline personality disorder. *Compare Wendi C. M.*, 2019 WL 4259457, at \*3 *with* Record at 26-27. He stated that his mental RFC findings were "consistent with the evidence of record showing" that the plaintiff had those severe impairments but that, "with compliance to prescribed

8

treatment, [wa]s capable of performing work tasks[,]" a proposition for which he cited Exhibit 26F at pages 6-7, a February 8, 2018, note of Acadia Hospital treating provider Melissa A. Friend-Adams, L.C.P.C. *Id*. at 27, 945-46. Yet, it is unclear that the cited note stands for that proposition. While L.C.P.C. Friend-Adams recorded a decrease in the plaintiff's "OQ" score, reflecting "her improving stability[,]" she also (i) noted that the plaintiff reported that she was "beginning to feel safe in her home again, though continues to struggle with going out[,]" (ii) found on mental status examination that the plaintiff's mood was dysphoric, (iii) and assessed her as continuing "to struggle with emotional regulation at her baseline and with current increase stressors" and "limited in her use of skills." *Id*. at 945.

Finally, as in *Wendi C. M.*, "the ALJ's reliance on largely normal mental status examinations and activities of daily living" did not "fill the gap." *Wendi C. M.*, 2019 WL 4259457, at *3. That the plaintiff could attend a sporting event with her daughter in August 2017 and that she was noted on mental status examination in April 2018 to have "good judgment/insight, as well as, logical thought process and content," did not, contrary to the ALJ's finding, "support[] that she . . . ha[d] improvement with her mood and ability to . . . interact with others." Record at 26 (citing Exhibit 26F at 3). Moreover, as the plaintiff noted in her brief and her counsel emphasized at oral argument, *see* Statement of Errors at 11-12, in that same April 2018 treatment record, the plaintiff was noted to have reported that her anxiety was "through the roof[,]" she was "in a constant state of trigger," and her sleep was "horrible[,]" *id*. at 941, and she was found on mental status examination to be "[d]isheveled" in appearance with an "[a]nxious, [f]luctuating" mood and a "[t]earful, [a]nxious" affect, *id*. at 942.

As the commissioner observes, *see* Opposition at 6, and the plaintiff's counsel conceded at oral argument, any error in finding that the plaintiff was capable of some interaction with the public

9

is harmless given that the vocational expert present at her hearing testified that there were jobs existing in significant numbers in the national economy that a person precluded from public contact could perform, *see* Record at 79-81. Nonetheless, remand is required as a result of the ALJ's failure to explain how a limitation against "tandem or other team-orientated type work[,]" Finding 5, *id*. at 21, adequately took into account the plaintiff's limitations in dealing with co-workers and supervisors or how, if at all, he took into account any limitations stemming from the mental health impairments he found severe based on evidence unseen by Dr. Stahl. Those deficiencies render his mental RFC unsupported by substantial evidence, undermining his Step 5 finding that the plaintiff could perform other work existing in substantial numbers in the national economy. *See, e.g., Arocho v. Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (responses of a vocational expert are relevant only to the extent offered in response to hypothetical questions that correspond to the medical evidence of record).[4]

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **REMANDED** for proceedings consistent herewith.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum,*

---

[4] The commissioner cites *Brigham v. Colvin*, No. 1:15-cv-00433-JHR, 2016 WL 4994990, at *4 (D. Me. Sept. 19, 2016), for the proposition that the plaintiff's argument that the ALJ impermissibly interpreted raw medical evidence fails because she does not show that this evidence "'would necessarily have altered [Dr. Stahl's] opinion *in a manner more favorable to the plaintiff*[.]'" Opposition at 6 (quoting *Brigham*, 2016 WL 4994990, at *4) (bracketed material and emphasis added by commissioner). However, the court did not make that observation in the context of considering whether an ALJ had impermissibly interpreted raw medical evidence. *See id*. at *4.

*within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 14th day of February, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge